# TOWN OF STRATFORD *v.* INTERNATIONAL ASSOCIATION OF FIREFIGHTERS, AFL-CIO, LOCAL 998
## (SC 15966)

Borden, Berdon, Norcott, Katz and Palmer, Js.

Argued January 20—officially released March 23, 1999

*Richard J. Buturla,* for the appellant (plaintiff).

*J. William Gagne, Jr.,* with whom, on the brief, was *P. Jo Anne Burgh,* for the appellee (defendant).

*Opinion*

KATZ, J. The principal issue in this certified appeal involves the extent to which an arbitrator is bound, under the doctrine of collateral estoppel, by a prior arbitration award involving the interpretation of the same provision of a contract between the same parties. We conclude that, as a matter of public policy, arbitrators are not required to give collateral estoppel effect to prior arbitral awards.

The following facts, which appear in the Appellate Court opinion, are pertinent to this appeal. "The plaintiff, the town of Stratford [town], and the [defendant, the International Association of Firefighters, AFL-CIO, Local 998 (union)] at all relevant times were parties to a collective bargaining agreement (agreement) that contained an arbitration clause. Under the arbitration clause, the parties agreed to submit unresolved grievances to the state board of mediation and arbitration (board). The parties further agreed that an arbitration decision by the board would be final.

"On December 12, 1991, the date on which the grievances involved in this appeal were filed, article I of the agreement provided that 'the positions of assistant fire prevention chief, assistant fire chief, deputy fire chief and chief are not members of the union bargaining unit.' Article XXII, § 1, of the agreement, however, provided that '*all promotions in the Fire Department* shall be made from eligibility lists for each promotional classification, which lists shall be established through competitive merit examinations . . . .' The agreement also provided that when a vacancy occurred, it was to be filled by one of the three highest ranking candidates and that subsequent appointments were to be generated in the order of standing on the list. Moreover, the agreement provided that when an eligibility list expired, a new list had to be established within ninety days.

"In 1991, the eligibility lists for the positions of assistant fire chief and lieutenant in the fire prevention bureau expired, and replacement lists were not created within ninety days. On December 12, 1991, the union filed a class action grievance against the town, no. 91-04, on behalf of the firefighters seeking positions in the fire prevention bureau. The grievance alleged that the town had violated the agreement because it had failed to establish new examinations and eligibility lists for the positions of assistant fire chief and lieutenant for the fire prevention bureau.

"On December 12, 1991, the union also filed grievance no. 91-03, which was submitted to the board to determine if it was arbitrable. As did grievance no. 91-04, which was filed on the same day, no. 91-03 alleged that the town had violated article XXII, § 1, of the agreement. This grievance concerned the following events, which had occurred earlier in 1991. In April, 1991, the town administered a promotional examination for the position of assistant fire chief in the fire suppression division. On May 30, 1991, the results of the examination

were posted and a list was established with eight individuals, ranked one through eight, with the candidate receiving the highest score ranked as number one. On or about June 3, 1991, the town interviewed the first three candidates on the eligibility list for a vacancy for the position of assistant fire chief in the fire suppression division. This vacancy was filled by the candidate who was ranked first. On or about December 11, 1991, the town interviewed the candidates ranked two through four for the assistant fire chief position, and the town selected the third ranked candidate over the second ranked candidate. On or about January 4, 1993, the town interviewed the remaining candidates for the assistant fire chief position for two additional vacancies in the fire suppression division. The town again selected lower ranked candidates over individuals with higher ranks. The union's ground for grievance no. 91-03 was that the town had failed to promote employees on the eligibility list to assistant fire chief vacancies in the fire suppression division in the manner in which firefighters are to be selected from such lists as provided by § 1 of article XXII.

"On December 28, 1993, a panel of arbitrators of the board issued an award in grievance no. 91-04 [first award], holding that article XXII of the agreement did not apply. The board found that the grievance was not arbitrable because the promotions clause of the agreement did not apply to promotions to jobs outside of the bargaining unit, including promotions to the position of assistant fire prevention chief. A unanimous panel rejected the union's contention that the parties had agreed orally in the 1987 negotiations to continue to apply article XXII to the assistant fire chief position.

"On March 17, 1994, a different panel of arbitrators issued an award holding that grievance no. 91-03 was arbitrable, which was inconsistent with the earlier decision. This second panel also decided that the issue to be

decided was whether article XXII applies to employee promotions to the assistant fire chief position. The subject matter of this grievance thereafter proceeded on the merits before a third panel of arbitrators.

"On May 25, 1995, the third panel of arbitrators addressed the merits of no. 91-03 and issued an award [second award][1] holding that article XXII, § 1, did apply to promotions to the position of assistant fire chief and that the town had violated this provision. The two panels of arbitrators deciding aspects of grievance no. 91-03, therefore, reached conclusions on the issue of arbitrability that were at odds with the prior arbitration award, namely, that article XXII applies to promotions to the assistant fire chief position.

"On February 22, 1996, the town filed an application to vacate the [second award] pursuant to General Statutes § 52-418 (a) (4).[2] The town argued that the arbitrators in no. 91-03 had incorrectly decided the award by failing to apply the doctrine of collateral estoppel to preclude relitigation of the interpretation of the agreement. The town argued that the decision of the

[1] Although there were two awards issued as to grievance no. 91-03, it is the award issued May 25, 1995, that the town sought to vacate. Therefore, although this award was actually the third award relevant to this appeal to be issued, we refer to it as the second award throughout this opinion.

[2] General Statutes § 52-418 (a) provides: "Upon the application of any party to an arbitration, the superior court for the judicial district in which one of the parties resides or, in a controversy concerning land, for the judicial district in which the land is situated or, when the court is not in session, any judge thereof, shall make an order vacating the award if it finds any of the following defects: (1) If the award has been procured by corruption, fraud or undue means; (2) if there has been evident partiality or corruption on the part of any arbitrator; (3) if the arbitrators have been guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown or in refusing to hear evidence pertinent and material to the controversy or of any other action by which the rights of any party have been prejudiced; or (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made."

panel in no. 91-04 controlled the contractual interpretation issue regarding the applicability of article XXII, § 1. A hearing was held on August 19, 1996, and on August 27, 1996, the Superior Court vacated the [second award]. The union filed [an] appeal challenging the trial court's decision to vacate the [second award]." (Emphasis in original; internal quotation marks omitted.) *Stratford* v. *International Assn. of Firefighters, AFL-CIO, Local 998*, 48 Conn. App. 849, 850–53, 713 A.2d 269 (1998).

In the Appellate Court, the union claimed that "the trial court improperly vacated the [second award] on two grounds.[3] The union contend[ed] that because the submission of the parties pertaining to grievance no. 91-03 was unrestricted, the award in that case was final and binding and [could not] be reviewed for errors of law or fact. The union contend[ed], moreover, that even if the submission of an unrestricted arbitration award is reviewable for errors of law or fact, arbitrators in general are not bound by the decisions of other arbitrators. In this respect, the union argue[d] that the trial court improperly applied the doctrine of collateral estoppel to vacate the [second award]. The town claim[ed] that the trial court correctly vacated the arbitration award because the arbitrators exceeded their powers under § 52-418 (a) (4) and because the award violate[d] clear public policy in that the arbitration board did not apply the doctrine of collateral estoppel." Id., 853–54.

The Appellate Court reversed the judgment of the trial court, concluding that: (1) the arbitrators had not exceeded their powers under § 52-418 (a) (4); id., 858; and (2) "the trial court improperly [had] interpreted

---

[3] The union also made other claims, which the Appellate Court did not address "in view of [its] determination on the inapplicability of collateral estoppel." *Stratford* v. *International Assn. of Firefighters, AFL-CIO, Local 998*, supra, 48 Conn. App. 853 n.3.

the public policy exception as a basis for vacating the arbitration award as to [the second award]." Id., 860.

We granted the town's petition for certification to appeal, limited to the following issues: (1) "Whether the Appellate Court properly concluded that the trial court improperly [had] vacated the arbitration award on the ground that the arbitration panel [had] failed to apply the doctrine of collateral estoppel with respect to a prior arbitration award on the same issue?"; (2) "Whether the Appellate Court properly concluded that the trial court improperly [had] interpreted the public policy exception as a basis for vacating the arbitration award as to the grievance no. 91-03?"; and (3) "Whether the Appellate Court properly concluded that the arbitrators did not exceed their powers under General Statutes § 52-418 (a)." *Stratford* v. *International Assn. of Firefighters, AFL-CIO, Local 998*, 245 Conn. 918, 717 A.2d 236 (1998). This appeal followed.

As to the first issue, we hold that arbitrators are not required to give preclusive effect to the decisions of prior arbitrators. We resolve the second issue in favor of the union, concluding that the Appellate Court properly determined that the trial court improperly had interpreted the public policy exception to arbitral authority. Finally, as to the third issue, we conclude that the arbitrators did not exceed their authority under § 52-418 (a) (4).

I

Our analysis of this issue begins with a restatement of familiar principles. Judicial review of arbitral decisions is narrowly confined. "When the parties agree to arbitration and establish the authority of the arbitrator through the terms of their submission, the extent of our judicial review of the award is delineated by the scope of the parties' agreement. *American Universal Ins. Co.* v. *DelGreco*, 205 Conn. 178, 185, 530 A.2d 171

(1987). When the scope of the submission is unrestricted, the resulting award is not subject to de novo review even for errors of law so long as the award conforms to the submission. *Hartford* v. *Board of Mediation & Arbitration*, 211 Conn. 7, 14, 557 A.2d 1236 (1989); *New Haven* v. *AFSCME, Council 15, Local 530*, 208 Conn. 411, 415–16, 544 A.2d 186 (1988). Because we favor arbitration as a means of settling private disputes, we undertake judicial review of arbitration awards in a manner designed to minimize interference with an efficient and economical system of alternative dispute resolution. *Middletown* v. *Police Local, No. 1361*, 187 Conn. 228, 230, 445 A.2d 322 (1982); *State* v. *Connecticut Employees Union Independent*, 184 Conn. 578, 579, 440 A.2d 229 (1981)." *Garrity* v. *McCaskey*, 223 Conn. 1, 4–5, 612 A.2d 742 (1992). "Where the submission does not otherwise state, the arbitrators are empowered to decide factual and legal questions and an award cannot be vacated on the grounds that the construction placed upon the facts or the interpretation of the agreement by the arbitrators was erroneous. Courts will not review the evidence nor, where the submission is unrestricted, will they review the arbitrators' decision of the legal questions involved." (Internal quotation marks omitted.) *Caldor, Inc.* v. *Thornton*, 191 Conn. 336, 340–41, 464 A.2d 785 (1983), aff'd, 472 U.S. 703, 105 S. Ct. 2914, 86 L. Ed. 2d 557 (1985).

One of the principal reasons for this deference is that the scope of our review is expressly limited by § 52-418; *Metropolitan District Commission* v. *AFSCME, Council 4, Local 184*, 237 Conn. 114, 118, 676 A.2d 825 (1996); and, sometimes, by the terms of the parties' agreement. *Garrity* v. *McCaskey*, supra, 223 Conn. 5 ("[t]he authority of an arbitrator to adjudicate the controversy is limited only if the agreement contains express language restricting the breadth of issues, reserving explicit rights, or conditioning the award on

court review"). We have stated on numerous occasions that arbitration is a creature of contract. See, e.g., *American Universal Ins. Co.* v. *DelGreco,* supra, 205 Conn. 185; *O & G/O'Connell Joint Venture* v. *Chase Family Ltd. Partnership No. 3,* 203 Conn. 133, 145, 523 A.2d 1271 (1987); *Board of Education* v. *AFSCME, Council 4, Local 287,* 195 Conn. 266, 269, 487 A.2d 553 (1985). Therefore, it is the arbitrator's judgment that was bargained for and contracted for by the parties, and we do not substitute our own judgment merely because our interpretation of the agreement or contract at issue might differ from that of the arbitrator.

These well established principles governing consensual arbitration are subject to certain exceptions. "Even in the case of an unrestricted submission, we have, however, recognized three grounds for vacating an award: (1) the award rules on the constitutionality of a statute; *Caldor, Inc.* v. *Thornton,* [supra, 191 Conn. 344]; (2) the award violates clear public policy; *Watertown Police Union Local 541* v. *Watertown,* 210 Conn. 333, 339, 555 A.2d 406 (1989); or (3) the award contravenes one or more of the statutory proscriptions of § 52-418. *Carroll* v. *Aetna Casualty & Surety Co.,* [189 Conn. 16, 22–23, 453 A.2d 1158 (1983)]." *Garrity* v. *McCaskey,* supra, 223 Conn. 6.

With these well established principles forming the topography of our legal landscape, we begin our analysis of the first issue—whether the Appellate Court properly concluded that the trial court improperly had vacated the second award on the ground that the arbitration panel had failed to apply the doctrine of collateral estoppel with respect to the first award, which involved the same issue. We conclude that the Appellate Court's conclusion was proper.

"The common-law doctrine of collateral estoppel, or issue preclusion, embodies a judicial policy in favor of

judicial economy, the stability of former judgments and finality. *State* v. *Ellis*, 197 Conn. 436, 466, 497 A.2d 974 (1985), on appeal after remand sub nom. *State* v. *Paradise*, 213 Conn. 388, 567 A.2d 1221 (1990). Collateral estoppel means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit. *Ashe* v. *Swenson*, 397 U.S. 436, 443, 90 S. Ct. 1189, 25 L. Ed. 2d 469 (1970). Issue preclusion arises when an issue is actually litigated and determined by a valid and final judgment, and that determination is essential to the judgment. *Scalzo* v. *Danbury*, 224 Conn. 124, 128, 617 A.2d 440 (1992). Also, the issue must have been fully and fairly litigated in the first action. *Virgo* v. *Lyons*, 209 Conn. 497, 501, 551 A.2d 1243 (1988)." (Internal quotation marks omitted.) *State* v. *McDowell*, 242 Conn. 648, 655, 699 A.2d 987 (1997). Collateral estoppel " 'express[es] no more than the fundamental principle that once a matter has been fully and fairly litigated, and finally decided, it comes to rest.' " *Mazziotti* v. *Allstate Ins. Co.*, 240 Conn. 799, 813, 695 A.2d 1010 (1997), quoting *State* v. *Ellis*, supra, 465. It should be noted, however, that although collateral estoppel precludes subsequent litigation in our courts of issues meeting the above requirements, we have never addressed whether the doctrine properly applies in the context of arbitration.[4] Therefore, at the core of this issue is a conflict between two competing policy considerations: (1) the desire to promote stability and finality of judgments, and the closely related interest of judicial economy; and (2) the desire to maintain the flexibility of the arbitral process.

---

[4] The town contends that support for the principle that arbitrators must give collateral estoppel effect to prior arbitration awards can be found in *Corey* v. *Avco-Lycoming Division*, 163 Conn. 309, 318, 307 A.2d 155 (1972), cert. denied, 409 U.S. 1116, 93 S. Ct. 903, 34 L. Ed. 2d 699 (1973), in which this court held that a prior arbitration award was binding and conclusive on a hearing tribunal of the commission on human rights and opportunities. For the reasons discussed in footnote 7 of this opinion, we disagree.

The town asserts that "there is no satisfactory reason not to apply the doctrines of collateral estoppel and res judicata to a prior arbitration in a subsequent arbitration." Therefore, according to the town, the Appellate Court acted improperly in failing to apply the doctrine of collateral estoppel to preclude rearbitration of the issue of whether article XXII of the agreement applied to the position of assistant fire chief. In contrast, the union argues that, because arbitration is a creature of contract, an arbitrator need not grant precedential effect to a prior arbitration award unless the parties' agreement specifically requires it to do so. Moreover, even if the agreement does contain such a requirement, the interpretation of that provision is properly left to an arbitrator in the first instance. We agree with the union.

Although the general principles of arbitration are well established in our case law, the precise issue before us is one of first impression in this court. We find illuminating, therefore, the opinions of federal courts that have considered the issue.

"It is black letter law that arbitration awards are not entitled to the precedential effect accorded to judicial decisions. Indeed, an arbitration award is not considered conclusive or binding in subsequent cases involving the same contract language but different incidents or grievances. . . . [A]n arbitrator's refusal to follow a previous arbitrator's interpretation of a specific contractual provision does not expose an ensuing award to judicial tinkering . . . ." (Citations omitted.) *El Dorado Technical Services, Inc.* v. *Union General de Trabajadores de Puerto Rico*, 961 F.2d 317, 321 (1st Cir. 1992). "Courts reviewing inconsistent arbitration awards have generally concluded that arbitrators are not bound by the rationale of earlier decisions and that inconsistency with another award is not enough by itself to justify vacating an award. *Westinghouse Elevators of Puerto Rico, Inc.* v. *S.I.U. de Puerto Rico*, 583 F.2d

1184, 1186–87 (1st Cir. 1978). Principles of stare decisis and res judicata do not have the same doctrinal force in arbitration proceedings as they do in judicial proceedings . . . ." (Citations omitted.) *Connecticut Light & Power Co.* v. *Local 420, International Brotherhood of Electrical Workers, AFL-CIO*, 718 F.2d 14, 20 (2d Cir. 1983).

The overwhelming majority of federal jurisdictions that have considered this issue have held that arbitrators are not bound by the decisions of prior arbitrators. See, e.g., *IDS Life Ins. Co.* v. *SunAmerica Life Ins. Co.*, 136 F.3d 537, 543 (7th Cir. 1998) ("arbitrators' decisions are not intended to have precedential effect even in arbitration [unless given that effect by contract]"); *Hotel Assn. of Washington, D.C., Inc.* v. *Hotel & Restaurant Employees Union, Local 25, AFL-CIO*, 963 F.2d 388, 390–91 (D.C. Cir. 1992) ("[W]here the agreement is silent, the arbitrator may decline to follow arbitral precedent when his judgment is that earlier decisions are erroneous. . . . [T]he question whether a prior arbitral decision binds a subsequent arbitrator can be determined only by reference to the agreement itself. It falls to the second arbitrator, therefore, to answer that question in the first instance." [Citations omitted; internal quotation marks omitted.]); *El Dorado Technical Services, Inc.* v. *Union General de Trabajadores de Puerto Rico*, supra, 961 F.2d 321 ("an arbitration award is not considered conclusive or binding in subsequent cases involving the same contract language but different incidents or grievances"); *International Brotherhood of Electrical Workers, Local Union No. 199* v. *United Telephone Co. of Florida*, 738 F.2d 1564, 1571 (11th Cir. 1984) ("[the] severely circumscribed judicial role [in the arbitral process] does not allow courts to impose rules of precedent or to deprive arbitrators of jurisdiction to decide matters of contract interpretation"); *Connecticut Light & Power Co.* v. *Local 420, International*

*Brotherhood of Electrical Workers, AFL-CIO*, supra, 718 F.2d 20–21 (recognizing that if different arbitrators decide identical issues, neither award will be set aside if each draws its essence from contract); *Butler Armco Independent Union v. Armco, Inc.*, 701 F.2d 253, 255 (3d Cir. 1983) ("absent contractual language to the contrary, one arbitrator's interpretation of a collective bargaining agreement is not binding on a subsequent arbitrator"); *Little Six Corp.* v. *United Mine Workers of America, Local Union No. 8332*, 701 F.2d 26, 29 (4th Cir. 1983) (agreeing with "solid, well-reasoned case law holding that the preclusive effect of a prior arbitral award is itself a question for arbitration"); *New Orleans Steamship Assn.* v. *General Longshore Workers, ILA Local Union No. 1418*, 626 F.2d 455, 468 (5th Cir. 1980) (stating that issue of "[w]hether [an arbitration] award can be given an effect akin to res judicata or stare decisis with regard to future disputes that may arise between the parties . . . itself is a proper subject for arbitration"); *Riverboat Casino, Inc.* v. *Local Joint Executive Board of Las Vegas*, 578 F.2d 250, 251 (9th Cir. 1978) (rejecting argument that arbitrator was bound by prior award); cf. *American National Can Co.* v. *United Steelworkers of America, Local 3628*, 120 F.3d 886, 893 (8th Cir. 1997) (holding arbitrator not bound by two prior awards, because of factual distinctions, despite fact that awards involved same contract provision and similar issues); but see *Action Distributing Co.* v. *International Brotherhood of Teamsters Local 1038*, 977 F.2d 1021, 1026 (6th Cir. 1992) (implying that if issue in arbitration proceeding had been identical to that in prior award, collateral estoppel principles would apply). In light of the considerable amount of experience the federal courts have in deciding cases involving labor arbitration, we find their words instructive.[5]

---

[5] This issue is still very unsettled among state courts. Some courts hold that res judicata and collateral estoppel principles apply in the arbitral

As we have noted, arbitration is a creature of contract. See *American Universal Ins. Co.* v. *DelGreco,* supra, 205 Conn. 185; *O & G/O'Connell Joint Venture* v. *Chase Family Ltd. Partnership No. 3,* supra, 203 Conn. 145; *Board of Education* v. *AFSCME, Council 4, Local 287,* supra, 195 Conn. 269. By including an arbitration clause in their contract, the parties bargain for a decision maker that is not constrained by formalistic rules governing courtroom proceedings and dictating judicial results. Rather, the arbitrator is governed by the terms of the parties' contract—in this case, the collective bargaining agreement. It is also that agreement that sets limits on the arbitrator's authority. In negotiating the agreement, the parties are free to bargain for whatever terms they choose, including a provision establishing a system of arbitral precedent.[6] If, however, the parties elect not to include such a provision, or if one party's attempts to negotiate for the inclusion of such a provision are unsuccessful, arbitrators are free to attach to prior awards whatever precedential value they deem appropriate. Put simply, the

---

process; see, e.g., *International Assn. of Firefighters, Local 1285* v. *Las Vegas,* 107 Nev. 906, 911, 823 P.2d 877 (1991); *School District of Philadelphia* v. *Philadelphia Federation of Teachers, Local 3,* 168 Pa. Commw. 671, 651 A.2d 1152, 1156 (1994); *Dane County* v. *Dane County Union Local 65, AFSCME, AFL-CIO,* 210 Wis. 2d 267, 279, 565 N.W.2d 540 (App. 1997); and others hold to the contrary. See, e.g., *Local 786, International Brotherhood of Teamsters* v. *Glenview Material Co.,* 204 Ill. App. 3d 447, 452–53, 562 N.E.2d 289 (1990); *Pike-Delta-York Board of Education* v. *Pike-Delta-York Education Assn.,* 508 N.E.2d 678, 683 (Ohio Common Pleas 1987).

[6] For example, parties could choose to include a provision expressly requiring all arbitrators to apply the doctrine of collateral estoppel, and even res judicata or stare decisis, to prior arbitral awards involving that same contract, to the same extent that a court of law would apply those doctrines to prior judicial decisions. Such a provision is distinct from a "final and binding" clause, which, arguably, could be interpreted as having a more restricted scope, applying only to the particular grievant, when the same facts and the identical issue are involved. We note, however, that in a case involving either type of provision, it properly is left to the arbitrator to determine the effect of such a provision. See our discussion in the text above.

parties bargain for the arbitrator's independent judgment and sense of justice, unfettered by the opinions of other arbitrators.[7]

Moreover, even when the parties elect to include in their contract a provision conferring precedential effect upon prior awards, the interpretation of such a provision itself is properly left to an arbitrator, initially, rather than to the courts. As the Supreme Court of the United States has stated: "Because the authority of arbitrators is a subject of collective bargaining, just as is any other contractual provision, the scope of the arbitrator's authority *is itself* a question of contract interpretation that the parties have delegated to the arbitrator." (Emphasis added.) *W. R. Grace & Co.* v. *Local Union 759, International Union of United Rubber, Cork, Linoleum & Plastic Workers of America,* 461 U.S. 757,

---

[7] In support of its contentions, the town quotes from this court's decision in *Corey* v. *Avco-Lycoming Division,* 163 Conn. 309, 318, 307 A.2d 155 (1972), cert. denied, 409 U.S. 1116, 93 S. Ct. 903, 34 L. Ed. 2d 699 (1973). In *Corey,* the court stated that "[n]o satisfactory reason can be assigned why an [arbitration] award, which the parties have expressly stipulated should be final as to the subject submitted, should not be as conclusive as a court-rendered judgment." Id. We subsequently concluded that a prior arbitration award was binding and conclusive on a hearing tribunal of the commission on human rights and opportunities (commission). Id., 318–19. There are fundamental differences between an arbitration proceeding and a hearing before the commission, however, that render *Corey* materially distinguishable from the present case. As we have noted in the text of this opinion, the parties to a consensual arbitration have agreed upon that method of resolving their dispute. By the terms of their agreement, they determine the limits, if any, of the arbitrators' power and authority, and if they want to limit that power and authority by binding the arbitrators to the decisions of prior arbitrators, they are free to do so. In contrast, parties have no control over a hearing tribunal of the commission, which is a statutorily created body with regulations promulgated governing proceedings before it. See Regs., Conn. State Agencies § 46a-54-1 et seq. Because parties before a commission hearing tribunal are unable to decide for themselves whether collateral estoppel should apply to a prior arbitration in a given proceeding, in *Corey,* we decided that issue. Essentially, the flexible nature of arbitration, which is lacking in commission proceedings, significantly limits *Corey*'s applicability in the present appeal.

765, 103 S. Ct. 2177, 76 L. Ed. 2d 298 (1983); see also *Butler Armco Independent Union* v. *Armco, Inc.*, supra, 701 F.2d 255–56 ("the question whether the re-arbitration provision covered the dispute between the parties was itself a matter of interpretation which the collective bargaining agreement required the arbitrator, rather than the court, to resolve," citing *Local 103 of the International Union of Electrical, Radio & Machine Workers, AFL-CIO* v. *RCA Corp.*, 516 F.2d 1336, 1340–41 [3d Cir. 1975]). Therefore, the extent to which an arbitrator is bound by the decision of a previous arbitrator is an issue that falls to the second arbitrator to resolve in the first instance.

The town responds to the argument that collateral estoppel should not apply in the arbitration context because arbitration is a creature of contract, by stating: "[T]he fact that arbitration is a creature of contract [should not] preclude the application of the doctrines of collateral estoppel and res judicata, especially where, as here, the parties have expressly agreed that arbitration awards shall be 'final and binding.' "[8] Additionally, throughout its brief, the town asserts that the "final and binding" language of the agreement at issue in this case mandates that prior arbitration awards be given precedential effect on later ones. We disagree.

The defendant's assertion disregards the fact that it is within the province of the arbitrator to interpret every provision in the agreement before him or her, including the meaning to be ascribed to the phrase "final and binding." Accord *Hotel Assn. of Washington, D.C., Inc.* v. *Hotel & Restaurant Employees Union, Local 25, AFL-CIO*, supra, 963 F.2d 390 ("[t]he 'final and binding' clause does not so unequivocally import the principle of

---

[8] Article V, § 1 C, of the agreement provides that an arbitration decision rendered by the state board of mediation and arbitration "shall be final and binding on all parties."

precedent into arbitral decisionmaking that [the second arbitrator is] obliged expressly to consider [the first award]"); *International Brotherhood of Electrical Workers, Local Union No. 199* v. *United Telephone Co. of Florida*, supra, 738 F.2d 1572 ("whether [the 'final and binding' clause] establishes arbitration as binding precedent is a matter of contract interpretation for the arbitrator"; "whether or not the award is 'final' in a stare decisis sense is an issue for further arbitration"). Although one arbitrator might interpret such a phrase so as to require the application of collateral estoppel or res judicata principles, a subsequent arbitrator is free to construe that language as applicable only to subsequent arbitrations between the exact same parties, on the same contract provision, on precisely the same facts. In other words, the scope of such a phrase is determined by each arbitrator in turn.

Finally, our conclusion on this issue finds additional support in the single tiered nature of most arbitration proceedings. Unless parties have contracted for one, there is no appellate level in the arbitral process, that is, no opportunity for second review outside of those provided by statute and the limited exceptions set forth in *Garrity* v. *McCaskey*, supra, 223 Conn. 6. This fact, in conjunction with the exceedingly narrow scope of judicial review of arbitrators' awards, makes it all the more important that arbitrators be afforded the greatest opportunity to render correct decisions. Allowing arbitrators the flexibility to follow arbitral precedent where they deem appropriate, but disregard it when they conclude otherwise, creates an informal system of checks and balances in the arbitral process and thus helps to ensure that arbitration proceedings result in just dispositions.

On the basis of the foregoing, we believe that rigid adherence to the doctrine of collateral estoppel would impair the flexibility and discretion that lies at the core

of the arbitral process. Therefore, we hold that, in the absence of a specific contract provision to the contrary, an arbitrator is not bound to follow prior arbitration decisions, even in cases in which the grievances at issue involve the same parties and interpretation of the same contract provisions. Although an arbitrator may find well reasoned prior awards to be a compelling influence on his or her decision-making process, the arbitrator need not give such awards preclusive effect. Rather, the arbitrator should bring his or her own independent judgment to bear on the issue to be decided, using prior awards as the arbitrator sees fit, as it is the arbitrator's judgment for which the parties had bargained.

## II

As previously noted, a court may vacate an arbitration award on the ground that it rules on the constitutionality of a statute, violates a clear public policy or contravenes any of the statutory proscriptions of § 52-418 (a). *Garrity* v. *McCaskey*, supra, 223 Conn. 6. The town challenges the second award on the second and third grounds. We address, and reject, both arguments in turn.

## A

The town contends that the award violates clear public policy in favor of the application, where appropriate, of the doctrine of collateral estoppel. We disagree. Our decision that the very nature of arbitration makes the doctrine of collateral estoppel inapplicable to the arbitral process implicitly resolves, in the union's favor, the question of whether the Appellate Court properly concluded that the trial court improperly had interpreted the public policy exception in vacating the second award. We will nevertheless discuss the issue briefly in the interest of providing more thorough guidance.

The public policy challenge to arbitration awards "is premised on the fact that the parties cannot expect an

arbitration award approving conduct which is illegal or contrary to public policy to receive judicial endorsement any more than parties can expect a court to enforce such a contract between them. . . . When a challenge to the arbitrator's authority is made on public policy grounds, however, the court is not concerned with the correctness of the arbitrator's decision but with the lawfulness of enforcing the award. . . . Accordingly, the public policy exception to arbitral authority should be narrowly construed and [a] court's refusal to enforce an arbitrator's interpretation of [collective bargaining agreements] is limited to situations where the contract as interpreted would violate some explicit public policy that is well defined and dominant, and is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests. [*United Paperworkers International Union* v. *Misco, Inc.*, 484 U.S. 29, 43, 108 S. Ct. 364, 98 L. Ed. 2d 286 (1987)] . . . ." (Citations omitted; internal quotation marks omitted.) *Watertown Police Union Local 541* v. *Watertown*, supra, 210 Conn. 339–40; see also *Garrity* v. *McCaskey*, supra, 223 Conn. 7 ("[t]he public policy exception applies only when the award is clearly illegal or clearly violative of a strong public policy"). Therefore, in light of the exceedingly narrow scope of the public policy limitation on an arbitrator's authority, for the town to prevail on this claim it must demonstrate that the second award clearly contravenes an established public policy.

The town argues that the arbitration panel that issued the second award failed to adhere to the public policy mandating that the doctrine of collateral estoppel be applied to prior arbitrations. The town asserts that "[n]ot giving res judicata and collateral estoppel effect to prior arbitration awards defeats the whole purpose of arbitration by perpetuating repeated litigation of the

same issue, thereby rendering the arbitration system inefficient and uneconomical." Our discussion in part I of this opinion demonstrates our disagreement with the town's assertion. We reiterate that one of the fundamental principles of arbitration is that the process must be flexible enough to allow parties to negotiate their contracts as they choose, and they must be free in the first instance to decide for themselves whether arbitrators should give collateral estoppel effect to prior awards. We reiterate, however, that any such contract provision purportedly determining the precedential effect of prior arbitral awards is itself subject to an arbitrator's interpretation.

We acknowledge that the doctrine of collateral estoppel is enforced on public policy grounds; see, e.g., *Connecticut Natural Gas Corp.* v. *Miller*, 239 Conn. 313, 324, 684 A.2d 1173 (1996); as it "embodies a judicial policy in favor of judicial economy, the stability of former judgments and finality." *State* v. *McDowell*, supra, 242 Conn. 655, citing *State* v. *Ellis*, supra, 197 Conn. 466. Implicit in our conclusion that arbitrators are free to apply the principles of collateral estoppel as they deem appropriate, however, is the notion that the public policy in favor of maintaining the flexibility that is central to the arbitral process outweighs any public policy in favor of the rigid application of collateral estoppel principles to arbitration proceedings. We recognize the town's argument that the public policy favoring application of the doctrine carries particular force in public sector arbitration because the cost of multiple grievances to resolve inconsistent awards might be borne, ultimately, by the taxpaying public. Nevertheless, in light of the strong public policy favoring arbitration as an alternative method of dispute resolution; *Garrity* v. *McCaskey*, supra, 223 Conn. 4; and our desire to maintain the flexibility of the process and to remain true to its contractual nature, we conclude that the public policy

favoring application of the doctrine of collateral estoppel must yield. Consequently, we conclude that there is no merit to the town's argument that the second arbitration panel's failure to apply the doctrine violated public policy and, accordingly, we conclude that the Appellate Court properly determined that the trial court improperly had interpreted the public policy exception to arbitral authority.

B

We turn now to the final certified issue—whether the Appellate Court properly concluded that the arbitrators did not exceed their powers under § 52-418 (a) (4). As previously noted, "[j]udicial review of unrestricted submissions is limited to a comparison between the submission and the award to see whether, in accordance with the powers conferred upon the arbitrators, their award conforms to the submission." (Internal quotation marks omitted.) *Hartford* v. *Board of Mediation & Arbitration*, supra, 211 Conn. 14; see also, e.g., *Garrity* v. *McCaskey*, supra, 223 Conn. 4 ("[w]hen the scope of the submission is unrestricted, the resulting award is not subject to de novo review even for errors of law so long as the award conforms to the submission").

The town argues "that this general standard of review is not appropriate to determine whether the doctrine of collateral estoppel should be applied to preclude an arbitration panel in a second arbitration from deciding the same contractual interpretation issue already decided in a prior arbitration award." The town asserts that the contractual interpretation rendered in the first award became part of the agreement between the parties, at least during the balance of the agreement's term, and that, therefore, the second arbitration panel was barred from rearbitrating the issue of the proper interpretation of the same contractual provision. According to the town, therefore, the second panel exceeded its

powers by failing to give collateral estoppel effect to the first award. We are not persuaded.

The town maintains that "[i]t is a well established principle of arbitral law that the interpretation of a contractual provision in an arbitration award becomes incorporated into the collective bargaining agreement . . . ." We question how well established this principle truly is. The town has cited no Connecticut case law for the proposition, nor has our research discovered any. In support of its argument, the town relies upon a widely cited treatise, which provides that "[a]n award interpreting a collective bargaining agreement *usually* becomes a binding part of the agreement and will be applied by arbitrators thereafter." (Emphasis added.) F. Elkouri & E. Elkouri, How Arbitration Works (3d Ed. 1973) p. 377. This treatise also provides, however, that "the refusal to apply an award to cases of the same nature is justified where it is shown that any one of the following elements is present: (1) the previous decision was clearly an instance of bad judgment; (2) the decision was made without the benefit of some important and relevant facts or considerations; or (3) new conditions have arisen questioning the reasonableness of the continued application of the decision." Id., p. 379. Therefore, the authors recognize that an arbitrator is not necessarily bound by arbitral precedent in all circumstances.

Moreover, the point for which the town cites the treatise is contrary to the clear weight of judicial authority established since the time the treatise was published more than twenty years ago. See part I of this opinion. In fact, in the most recent edition of the treatise, published in 1997, the authors expressly state that although an award *usually* becomes a binding part of the agreement, "[i]t appears clear from court decisions that an arbitrator is not *required* to follow a prior award

construing the same agreement." (Emphasis in original.) F. Elkouri & E. Elkouri, How Arbitration Works (5th Ed. 1997) p. 613 n.52, citing *Connecticut Light & Power Co.* v. *Local 420, International Brotherhood of Electrical Workers, AFL-CIO,* supra, 718 F.2d 20; *Little Six Corp.* v. *United Mine Workers of America, Local Union No. 8332,* supra, 701 F.2d 29; *Fournelle* v. *National Labor Relations Board,* 670 F.2d 331, 344 (D.C. Cir. 1982); *New Orleans Steamship Assn.* v. *General Longshore Workers, ILA Local Union No. 1418,* supra, 626 F.2d 468; *Westinghouse Elevators of Puerto Rico* v. *S.I.U. de Puerto Rico,* supra, 583 F.2d 1186–87; *Riverboat Casino, Inc.* v. *Local Joint Executive Board of Las Vegas,* supra, 578 F.2d 251.

As additional support for its claim that arbitrators' contractual interpretations are incorporated into the contract during the life of the contract, the town cites several arbitration decisions in which arbitrators have given collateral estoppel or res judicata effect to prior awards, or in which they specifically have stated that a prior award has become part of the contract. We recognize that many arbitrators have given preclusive effect to prior awards. Additionally, many have followed the incorporation "rule" that the town urges us to recognize. As the union notes correctly, however, these decisions reveal only that some arbitrators have chosen to give such effect to prior awards. It does not lead to the conclusion that all arbitrators must do so.[9]

---

[9] In further support of its argument, the town cites *Fournelle* v. *National Labor Relations Board,* supra, 670 F.2d 344, in which the United States Court of Appeals for the District of Columbia cited the Elkouri treatise for the proposition that an award interpreting a contract provision becomes a binding part of the agreement. The town fails to note, however, that a decade after deciding *Fournelle,* the same court decided *Hotel Assn. of Washington, D.C., Inc.* v. *Hotel & Restaurant Employees Union, Local 25, AFL-CIO,* supra, 963 F.2d 390, in which it concluded that, in the absence of a specific provision in the collective bargaining agreement to the contrary, an arbitrator is not bound by arbitral precedent. In fact, the court in that case quoted *Fournelle,* stating that "[a]s we have noted before, where the agreement is

We hold, therefore, that an arbitrator's decision does not become a binding part of the parties' agreement unless the parties have included a provision in their agreement mandating such a result. We reiterate that even when the parties have included such a provision in the agreement, however, the interpretation of such a provision is itself a proper subject of arbitration.

The linchpin of the town's argument that the arbitration panel that issued the second award exceeded its authority under § 52-418 (a) (4) is that the first award became incorporated into the agreement and that, by reaching a conclusion inconsistent with that of the arbitration panel that issued the first award, the second panel failed to give effect to the parties' agreement. Having already held, however, that an arbitration award does not become a binding part of the agreement in the absence of a specific provision requiring such a result, and having held that collateral estoppel principles are not binding on arbitrators, we have considered and rejected the town's statutory claim.[10] We conclude,

silent, the 'arbitrator may decline to follow arbitral precedent when his judgment is that earlier decisions are erroneous.' " Id., 390, quoting *Fournelle* v. *National Labor Relations Board,* supra, 343–44 n.22.

Additionally, the town relies on *International Assn. of Firefighters, Local 1285* v. *Las Vegas,* 107 Nev. 906, 911–12, 823 P.2d 877 (1991), in which the Supreme Court of Nevada held that the doctrine of collateral estoppel precluded an arbitrator from not following a prior arbitrator's interpretation of a provision of a collective bargaining agreement, and implied that arbitral decisions become part of the collective bargaining agreement. Although we believe that the factual scenario of that case is distinguishable from that of the present case, we recognize that the holding of the Supreme Court of Nevada did not rely on the essence of such distinctions. In light of the uncertainty in state courts surrounding this issue, however, we find the ample federal precedent more persuasive than the limited case law from other states. Therefore, we decline to follow the example set by the Supreme Court of Nevada.

[10] The town actually makes no claim, independent of those aforementioned, that the arbitrators exceeded their authority. We note, however, that a careful comparison of the second award with the submissions leads us to conclude that the award did not exceed the scope of the submissions. *Garrity* v. *McCaskey,* supra, 223 Conn. 4; *Hartford* v. *Board of Mediation & Arbitration,* supra, 211 Conn. 14.

therefore, that the arbitrators did not exceed their powers under § 52-418 (a) (4).

### III

In summary, we hold that arbitrators are not required to apply the doctrine of collateral estoppel to prior arbitration awards. Rather, they are entitled to use their own independent judgment, for which the parties bargained, to decide the issues properly before them. Additionally, we conclude that the Appellate Court correctly determined that the trial court improperly interpreted the public policy exception to the authority of arbitrators. Finally, we conclude that the arbitrators in this case did not exceed their powers under § 52-418 (a) (4).

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.

The parties' unrestricted submission in the first phase of the bifurcated grievance—that is, the grievance that resulted in the second award—simply asked, "Is the above-captioned case arbitrable?" The award answered the question in the affirmative. The unrestricted submission in the second phase of that grievance queried, "Did the Town of Stratford violate the provisions of the collective bargaining agreement as alleged in grievance #91-03? If so, what shall the remedy be?" The award answered the first question affirmatively, and set forth an appropriate remedy. This comparison reveals nothing to demonstrate that the awards in either phase of the grievance exceeded the scope of the respective submissions.

