[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MORANDUM OF DECISION ON APPLICATION TO VACATE ARBITRATION AWARD (DOCKET ENTRY NO. 101)
This case arises out of a grievance filed by the plaintiff, International Federation of Professional and Technical Engineers, Local 134, on behalf of a retired employee, August Correia, against the defendant municipal employer, the town of Stratford. In the grievance, the plaintiff claimed that Correia was denied heart and hypertension CT Page 13711 benefits under Article 13, Section 13.3 of the collective bargaining agreement. On February 5, 1997, Correia filed a notice of claim with the Workers' Compensation Commission requesting heart and hypertension benefits. According to the plaintiff, on February 11, 1997, the defendant's Workers' Compensation administrator denied Correia's claim, sending him a Form 43 notice. Correia then verbally complained to his supervisors about the denial of his claim. Correia filed a written grievance on April 3, 1998. The grievance was denied by the defendant and came before the arbitration panel on February 15, 2000. Before the panel, the defendant argued that the grievance was not arbitrable because it was not filed timely pursuant to Article 17, Section 17.1 of the parties' collective bargaining agreement. Article 17, Section 17.1 provides in relevant part: "No matter shall be subject to grievance unless taken up within fifteen (15) working days of its most recent occurrence." The plaintiff contended that the filing of the grievance was timely because it was filed within fifteen working days of Correia's bringing the matter to his supervisors' attention. On April 18, 2000, the arbitration panel issued an award holding that the grievance was not arbitrable. On June 9, 2000, the plaintiff filed an application to vacate the arbitration award. The defendant filed an objection. Both parties submitted memoranda in support of their positions.
The Connecticut Supreme Court has consistently held that "[j]udicial review of arbitral decisions is narrowly confined. When the parties agree to arbitration and establish the authority of the arbitrator through the terms of their submission, the extent of our judicial review of the award is delineated by the scope of the parties' agreement. . . . When the scope of the submission is unrestricted, the resulting award is not subject to de novo review even for errors of law so long as the award conforms to the submission. . . . Because we favor arbitration as a means of settling private disputes, we undertake judicial review of arbitration awards in a manner designed to minimize interference with the efficient and economical system of alternate dispute resolution." (Citations omitted; internal quotation marks omitted.) Stratford v. InternationalAssn. of Firefighters, AFL-CIO, Local 998, 248 Conn. 108, 114-115,728 A.2d 1063 (1999). "Every reasonable presumption is made in favor of sustaining the award . . . and the burden of demonstrating the nonconformance of the award to the submission is on the party challenging the arbitrator's decision." Bruno v. Dent. of Consumer Protection,190 Conn. 14, 19, 458 A.2d 685 (1983) "[A]rbitration is a creature of contract. . . . Therefore, it is the arbitrator's judgment that was bargained for and contracted for by the parties, and we do not substitute our own judgment merely because our interpretation of the agreement or contract at issue might differ from that of the arbitrator." Stratfordv. International Assn. of Firefighters, AFL-CIO, Local 998, supra,248 Conn. 116. CT Page 13712
According to the collective bargaining agreement, arbitration is the final step in the grievance procedure. Pursuant to this procedure, the plaintiff and the defendant may submit unrestricted grievances to the State Board of Mediation and Arbitration for arbitration and "[t]he decision of the Arbitration Panel shall be final and binding on both parties." Article 17 § 17.3(c). A grievance is defined as "any dispute between the Municipality and the Association or between the Municipality and any employee or group of employees concerning the interpretation, application or violation of the Provisions of the Agreement." Article 17 § 17.1.
"In determining whether a submission is unrestricted, we look at the authority of the arbitrator. The authority of the arbitrator to adjudicate the controversy is limited only if the agreement contains express language restricting the breadth of issues, reserving explicit rights, or conditioning the award on court review. In absence of such qualifications, an agreement is unrestricted." Exley v. ConnecticutYankee Greyhound Racing, Inc., 59 Conn. App. 224, 229, ___ A.2d ___ (2000). "Where the submission does not otherwise state, the arbitrators are empowered to decide factual and legal questions and an award cannot be vacated on the grounds that the construction placed upon the facts or the interpretation of the agreement by the arbitrators was erroneous." (Internal quotation marks omitted.) Stratford v. International Assn. ofFirefighters, AFL-CIO, Local 998, supra, 248 Conn. 115.
The well established principles governing consensual arbitration are subject to certain exceptions. "Even in the case of an unrestricted submission, the [Connecticut Supreme Court has] . . . recognized three grounds for vacating an award: (1)the award rules on the constitutionality of a statute . . . (2) the award violates clear public policy . . . or (3) the award contravenes one or more of the statutory proscriptions of General Statutes § 52-418." (Citations omitted.)Id., 116.
The plaintiff asserts that the arbitration award should be vacated because the arbitrators exceeded their powers in violation of General Statutes § 52-418 (a)(4) by issuing an award that is "inherently inconsistent" with the collective bargaining agreement. Specifically, the plaintiff argues that the arbitration panel incorrectly concluded that the grievance was untimely. The plaintiff contends that the panel erred in its determination that the April conversation between Correia and his supervisors was a repetition of the defendant's denial of benefits and not a "recent occurrence" as described in Article 17, Section 17.1 of the collective bargaining agreement. The defendant contends that the plaintiff's argument has no merit because the arbitration award conforms CT Page 13713 to the parties' submission and it manifestly draws its essence from the collective bargaining agreement.
In this case, the arbitration provision does not contain restrictive language or condition the award on judicial review. Therefore, the submission was unrestricted. The stipulated issue submitted to the arbitration panel was: "Is the grievance of August Correia arbitrable?" (Award, p. 1.). A majority of the arbitration panel answered the submission by concluding that the grievance was not arbitrable because it was not filed timely. Generally, if the award conforms to the submission, as in the present case, the arbitrators have not exceeded their powers pursuant to § 52-418 (a)(4). See Bic Pen Corp. v. LocalNo. 134, 183 Conn. 579, 584, 440 A.2d 774 (1981). However, in limited circumstances a court will conduct a broader review of an arbitrator's decision. One such circumstance is "[w]here one party claims that the award, as issued, is inherently inconsistent with the underlying collective bargaining agreement. . . ." Board of Education v. Local 818,5 Conn. App. 636, 640, 502 A.2d 426 (1985). In such a case, "[a] court will review the award only to determine whether it draws its essence from the collective bargaining agreement." (Internal quotation marks omitted.) Id. citing United Steelworkers v. Enterprise Wheel Car Corporation,363 U.S. 593, 597, 80 S.Ct. 1358, L.Ed.2d 1424 (1960). Because "[a]n arbitrator is confined to interpretation and application of the collective bargaining agreement . . . [w]hen the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of this award. . . ." (Citations omitted; internal quotation marks omitted.) Board of Education v. AFSCME, 195 Conn. 266,273, 487 A.2d 553 (1985).
In the present case, a comparison of the agreement and the award does no support the plaintiff's claim that the arbitration award is "inherently inconsistent" with the collective bargaining agreement. In the memorandum portion of the arbitration panel's award, the arbitrators stated: "to sum it up, this belated protest of the denial of Mr. Correia's claims under the heading, heart and hypertension, simply does not constitute a `recent occurrence' as described in Article 17, Section 17.1. there is no `recent occurrence' of the denial." (Award, p. 6). The memorandum shows that in concluding the grievance was not arbitrable, the arbitrators interpreted Article 17, Section 17.1 of the collective bargaining agreement as applied to the particular factual circumstances of the case. Thus, the arbitration award draws its essence from the collective bargaining agreement.
Furthermore, in East Hartford v. East Hartford Municipal EmployeesUnion, Inc., 206 Conn. 643, 656-57, 539 A.2d 125 (1988), the Connecticut Supreme Court held that a trial court may not substitute its own finding CT Page 13714 on the issue of timeliness for the arbitrators' finding on this issue when, "as part of an unlimited submission to arbitration, the parties have contractually empowered the arbitrators to decide the issue of arbitrability."
Accordingly, it is submitted that the plaintiff's claim that the arbitrator's exceeded their powers in violation of General Statutes § 52-418 (a)(4) is without merit.
The plaintiff also asserts that the arbitration award should be vacated because it violates clear public policy because (1) it prejudices Correia's contractual rights on the grounds that he pursued benefits afforded him under Chapter 568 of the Connecticut General Statutes, and (2) there is no administrative procedure in place to determine whether a union member is entitled to benefits under Article 13, Section 13.3 of the collective bargaining agreement. The defendant contends that the plaintiff has failed to meet its burden of proving that the award clearly violates an established public policy mandate.
The proper standard of review for examining whether an arbitral decision violates clear public policy was recently articulated inSchoonmaker v. Cummings Lockwood of Connecticut, P.C., 252 Conn. 416,747 A.2d 1017 (2000). In Schoonmaker, the Connecticut Supreme Court stated: "Where there is no clearly established public policy against which to measure the propriety of the arbitrator's award, there is no public policy ground for vacatur. If, on the other hand, it has been determined that the arbitral award does implicate a clearly established public policy, the ultimate question remains as to whether the award itself comports with that policy." Id., 429.
The first step in analyzing a public policy challenge to an arbitration award is to determine whether a clear public policy is implicated in the case. "A public policy challenge to an arbitration award is rooted in the principle that parties cannot expect conduct which is illegal or contrary to public policy to receive judicial endorsement any more than parties can expect a court to enforce such a contract between them." (Internal quotation marks omitted.) Hartford v. International Assn. ofFirefighters, Local 760, 49 Conn. App. 805, 813, 717 A.2d 258, cert. denied, 247 Conn. 920, 722 A.2d 809 (1998). "When a challenge to the arbitrator's authority is made on public policy grounds, however, the court is not concerned with the correctness of the arbitrator's decision but with the lawfulness of enforcing the award. . . . Accordingly, the public policy exception to arbitral authority should be narrowly construed and [a] court's refusal to enforce an arbitrator's interpretation of [collective bargaining agreements] is limited to situations where the contract as interpreted would violate some explicit public policy that is CT Page 13715 well defined and dominant, and is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests." (Internal quotation marks omitted.) Stratford v.International Assn. of Firefighters, AFL-CIO, Local 998, supra,248 Conn. 126. "The party challenging the award bears the burden of proving that illegality or conflict with public policy is clearly demonstrated." (Internal quotation marks omitted.) Watertown Police UnionLocal 541 v. Watertown, 210 Conn. 333, 340, 555 A.2d 406 (1989).
Neither of the plaintiff's public policy arguments identifies a violation of any explicit, dominant, and well defined public policy ascertained by reference to statutory or case law. The arbitration award did not preclude the plaintiff from filing a grievance because Correia filed a claim for benefits with the Workers' Compensation Commission, but rather because the plaintiff did not file the grievance within fifteen working days of its most recent occurrence. Given the narrow scope of the public policy limitation on arbitral authority, the plaintiff has not met its burden of proving that the award clearly violates an established public policy mandate. Accordingly, the plaintiff's claim that the arbitration award violates clear public policy is without merit.
For all the foregoing reasons, the plaintiff's motion to vacate the arbitration award is denied.
SKOLNICK, J.