[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION PE: MOTION FOR SUMMARY JUDGMENT (DOCKET ENTRY NO. 122)
This controversy arises out of defendant's motion for summary judgment (docket entry number 122) directed against plaintiff's various claims arising out of his termination from employment with the defendant. The following facts are undisputed. plaintiff, Pedro Delgado, a forty-seven year old Hispanic male, was hired by the defendant, Achieve Global, F/K/A Learning International, Inc., in August, 1994, as a program manager.[1]
The plaintiff was responsible for organizing and managing the revision of a project known as Project Ernestime, which was a training program for telephone sales people. (Plaintiff's Memorandum Ex. 1, ¶ 5.) On March 8, 1995, the people working on the project held a status meeting. The people present at the meeting, including the plaintiff and his supervisor, Howard Kamens, agreed that the program they were developing was too long for its target market and that it needed to be shortened.[2]
(Id., ¶ 18.) On March 30, 1995, the group met again to discuss the progress of the project with respect to the program's length. (Defendant's CT Page 13889 Memorandum, Ex. A, 1.) On April 6, 1995, the plaintiff met with Kamens and Porter. Kamens and Porter informed the plaintiff that they were removing him as project manager. (Plaintiff's Memorandum, Ex. 1, ¶ 28.) Kamens gave the plaintiff a letter in which he outlined several deficiencies in the plaintiff's performance. (Defendant's Memorandum, Ex. A, 1.) The plaintiff responded by sending a letter defending his performance to Kamens, Erdman, Porter and Corcoran. (Plaintiff's Memorandum, Ex. 1, 632, Ex. 8.) Throughout April, 1995, the plaintiff met and exchanged e-mails with both Erdman and Porter. In these conversations and e-mails the plaintiff claimed that the individuals responsible for his termination were motivated by discrimination. After conducting an investigation, Erdman and Porter decided that the plaintiff's claim of discrimination was unfounded, but that Kamens' decision to remove the plaintiff was premature. They subsequently returned the plaintiff to the project as program co-manager, a position he shared with another employee, Tern Zisman. (Defendant's Memorandum, Ex. B, ¶¶ 9-11.) In May, 1995, Corcoran denied the plaintiff a merit increase. (Defendant's Memorandum, Ex. B, ¶ 13; Plaintiff's Memorandum, Ex. 13.) In June, 1995, Kamens arranged for the plaintiff to receive training to enable him to take on a different job with the defendant. (Defendant's Memorandum, Ex. B, ¶ 14; Plaintiff's Memorandum, Ex. 1, ¶ 44.) In early August, 1995, the plaintiff became aware that Corcoran had denied his pay increase. (Plaintiff's Memorandum, Ex. 1, ¶ 45.) The plaintiff was upset by the denial and wrote a memorandum to Corcoran, with copies to Porter and Erdman, voicing his displeasure, and claiming that the denial was unfair and discriminatory. (Id., ¶ 47; See also, Plaintiff's Memorandum Ex. 14.) On August 8, 1995, the defendant, through Corcoran, terminated the plaintiff's employment. (Plaintiff's Memorandum, Ex. 18.)
The plaintiff filed a ten-count complaint following the termination of his employment.[3] On June 23, 1999, the plaintiff filed a revised complaint in which he alleges, inter alia, that the defendant removed him from his position as a project manager, gave him a negative performance rating, denied him a merit and/or other pay increase and terminated his employment on the basis of his race, age and sexual orientation in violation of the Connecticut Fair Employment Practices Act, General Statutes § 46a-51 et seq. The plaintiff further alleges that the defendant terminated him in retaliation for his previous complaints of discrimination in violation of General Statutes § 46a-60 (a)(4) The plaintiff also alleges common law claims for breach of contract, breach of an implied covenant of good faith and fair dealing, promissory estoppel, negligent and intentional infliction of emotional distress and negligent misrepresentation.
Previously, on October 23, 1996, the plaintiff commenced a similar action in the Superior Court (Docket No. 337527), which action was CT Page 13890 removed upon the defendant's motion to the United States District Court, District of Connecticut (Docket No. 3:96CV2364 (AHN)). The federal district court granted the defendant's summary judgment motion as to the plaintiff's federal law claims, but refrained from exercising pendant jurisdiction over the plaintiff's remaining state law claims.
On November 2, 1999, the defendant moved for summary judgment on all counts of the plaintiff's complaint on various grounds including, interalia, collateral estoppel and res judicata based on the federal district court's ruling.[4] The defendant filed a memorandum of law in support of its motion, together with numerous affidavits and exhibits. The plaintiff filed a memorandum in opposition to the defendant's motion for summary judgment together with numerous exhibits, including affidavits and correspondence between the parties.
Summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as matter of law. Witt v. St. Vincent's Medical Center,252 Conn. 363, 368, 746 A.2d 753 (2000). In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. The test is whether a party would be entitled to a directed verdict on the same facts. Hoskins v. Titan ValveEquities Group, Inc., 252 Conn. 789, 792, 749 A.2d 144 (2000). The party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. Witt v.St. Vincent's Medical Center, supra, 252 Conn. 368. A material fact has been adequately and simply defined as a fact that will make a difference in the result of the case. Hammer v. Lumberman's Mutual Casualty Co.,214 Conn. 573, 578, 573 A.2d 699 (1990). In ruling on a motion for summary judgment, the court's function is not to decide issues of material fact, but rather to determine whether any such issues exist.Nolan v. Borkowski, 206 Conn. 495, 500, 538 A.2d 1031 (1988).
 A Counts One, Two and Four (Race and Age Discrimination, Discriminatory Retaliation)
The defendant moves for summary judgment on counts one (race discrimination), two (age discrimination) and four (retaliation) on the grounds that these claims are barred by the doctrines of collateral estoppel and res judicata. The defendant argues that the plaintiff had a full and fair opportunity to litigate these issues before the federal district court in the prior action. In response, the plaintiff argues that only his federal age and race discrimination claims were argued in the district court, and, therefore, collateral estoppel and res judicata CT Page 13891 are not applicable to his state law discrimination claims. Both counsel addressed letters to the court, received in chambers, regarding a recent decision of the United States Supreme Court, Reeves v. Sanderson PlumbingProducts, Inc, 530 U.S. 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). In his letter, the plaintiff asserts that, based on the holding of Reeves, the district court applied an improper standard to the defendant's motion for summary judgment in the prior action, and, therefore, the plaintiff's state law claims of race and age discrimination are not barred by collateral estoppel. The defendant responds that the Reeves decision does not affect the decision of the district court judge as a final judgment. The defendant also argues that the district court's ruling in the plaintiff's prior case is entirely consistent with the holding in Reeves.
Claim preclusion (res judicata) prevents a litigant from reasserting a claim that has already been decided on the merits. Dowling v. FinleyAssociates, Inc., 248 Conn. 364, 373, 727 A.2d 1245 (1999). The common-law doctrine of collateral estoppel, or issue preclusion, embodies a judicial policy in favor of judicial economy, the stability of former judgments and finality. Stratford v. International Assn. ofFirefighters, AFL-CIO, Local 998, 248 Conn. 108, 116-17, 728 A.2d 1063
(1999). Collateral estoppel means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot be relitigated between the same parties in any future lawsuit. Id. Issue preclusion arises when an issue is actually litigated and determined by a valid and final judgment, and that determination is essential to the judgment. Id. Also, the issue must have been fully and fairly litigated in the first action. Id. An issue is actually litigated if it is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined. Delahunty v. Massachusetts MutualLife Insurance Co., 236 Conn. 582, 600, 674 A.2d 1290 (1996).[5] It is well settled that the party asserting res judicata bears the burden of establishing its applicability. Commissioner of Environmental Protectionv. Connecticut Bldg. Wrecking Co., 227 Conn. 175, 195, 629 A.2d 1116
(1993).
In his previous lawsuit, the plaintiff asserted his age and race discrimination and retaliation claims under federal law. As stated above, the district court, Hall, J., granted summary judgment in the defendant's favor as to these claims, but declined to exercise jurisdiction over the plaintiff's common law and state law claims. Although there is a striking similarity between the federal laws prohibiting age and race discrimination and the Connecticut law prohibiting the same,[6] the issue of whether the state law claims are barred by collateral estoppel should be decided by comparing the legal standards applied to these claims. CT Page 13892
In analyzing a disparate treatment discrimination claim, the United States Supreme Court set forth the basic allocation of burdens and order of presentation of proof in cases involving claims of employment discrimination.
 The plaintiff bears the initial burden of proving by the preponderance of the evidence a prima facie case of discrimination . . . In order to meet this burden, the plaintiff must present evidence that gives rise to an inference of unlawful discrimination. . . . If the plaintiff meets this initial burden, the burden [of production] then shifts to the defendant to rebut the presumption of discrimination by producing evidence of a legitimate, nondiscriminatory reason for its actions. If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted, and the factual inquiry proceeds to a new level of specificity. . . . The plaintiff then must satisfy her burden of persuading the factfinder that she was a victim of discrimination either directly by persuading the court [or jury] that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." (Citations omitted; internal quotation marks omitted.) Ford v. Blue Cross Blue Shield of Connecticut. Inc., 216 Conn. 40, 53-54, 578 A.2d 1054 (1990) citing McDonald Douglas Corporation v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).
There is a split of authority, both at the federal level, and among the judges of the Connecticut Superior Court with regard to a plaintiff's ultimate burden of proof. One line of cases holds that in order to prevail on a discrimination claim a plaintiff must show both that the employer's legitimate business reason is pretextual, and that the true reason for the adverse employment decision was, in fact, discrimination. See Langer v. Stop Shop Supermarket Co., Superior Court, judicial district of New Haven at New Haven, Docket No. 377385 (January 27, 2000, Licari, J.); D'Agata v. Sears, Superior Court, judicial district of New Britain, Docket No. 483475 (August 11, 1999, Robinson, J.); Fisher v.Vassar College, 114 F.3d 1332 (2d Cir. 1997) (en banc), cert. denied,522 U.S. 1075, 1185 S.Ct. 851, 139 L.Ed.2d 752 (1998) This standard of proof is sometimes called "pretext-plus" and has been utilized by the Second Circuit Court of Appeals. See Fisher v. Vassar College, supra,114 F.3d 1332. A second line of cases holds that in order to reach a jury a plaintiff need only prove that the employer's decision was false, CT Page 13893 because proof that the proffered reason was false permits a jury to infer that the true reason for the adverse employment decision was discrimination. See Pagan v. Floyd Manufacturing Co., Superior Court, judicial district of Hartford at Hartford, Docket No. 058355 (February 18, 2000, Hennessey, J.); Gordon v. Yale-New Haven Hospital, Superior Court, judicial district of New Haven at New Haven, Docket No. 365472 (May 22, 1998, Levin, J.); Kline v. TVA, 128 F.3d 337, 343 (6th Cir. 1997); Combs v. Plantation Patterns, 106 F.3d 1519, 1532 (11th Cir. 1997), cert. denied, 522 U.S. 1045, 118 S.Ct. 685, 139 L.Ed.2d 632
(1998).
In the plaintiff's previous lawsuit, the federal district court applied the "pretext-plus" standard in analyzing his age and race discrimination claims. The court assumed, without deciding, that the plaintiff could establish a prima facie case of discrimination. The court proceeded to find that the defendant had offered a legitimate nondiscriminatory reason for discharging the plaintiff and found that the plaintiff had put forth evidence to show that the proffered reason was pretextual. Nonetheless, the district court granted summary judgment because the plaintiff failed to prove that the true reason for his discharge was discrimination.
Recently, the United States Supreme Court sought to resolve the conflict over this issue among the federal appellate courts. In Reevesv. Sanderson Plumbing Products, Inc., 530 U.S. ___, 120 S.Ct. 2097,147 L.Ed.2d 105
(2000), the United States Supreme Court held that in order to survive judgment as a matter of law a plaintiff who is able to establish a prima facie case of discrimination and who shows that the defendant's proffered reason was unworthy of credence, or pretextual, is not necessarily required to offer additional evidence of intentional discrimination. The court reasoned that in some circumstances a discriminatory intent can be inferred from the falsity of the defendant's proffered explanation. Accordingly, the court held that the "pretext-plus" standard, the standard that the district court applied to the plaintiff's prior action, was incorrect and that a prima facie case plus sufficient evidence that the employer's explanation was false may permit a finding of liability. Given that the validity of the district court's decision has, at the very least, been called into question by Reeves, it would be inequitable for this court to apply collateral estoppel or res judicata to the plaintiff's state law claims.
In addition, because Connecticut looks to federal precedent in deciding its own antidiscrimination statutes; see Levy v. Commission on HumanRights Opportunities, 236 Conn. 96, 103, 671 A.2d 349 (1996); the United States Supreme Court's decision in Reeves v. Sanderson PlumbingCorp., supra, 120 S.Ct. 2097, should be the proper guide to this court in analyzing the plaintiff's state law discrimination claims. Therefore it CT Page 13894 is appropriate for this court to apply the standard announced by the United States Supreme Court in Reeves to the plaintiff's ultimate burden of proof.
The plaintiff's causes of action for age and race discrimination are brought under General Statutes § 46a-60.[7] Connecticut has adopted the McDonnell Douglas-Burdine model for analyzing employment discrimination claims. See Levy v. Commission on Human Rights Opportunities, supra, 236 Conn. 107.[8] As stated above, in order to prove his age and race discrimination claims, the plaintiff must first establish a prima facie case. To do so, the plaintiff must show that 1) he belongs to a protected class; 2) he was qualified for the position in question; 3) despite his qualifications, he suffered an adverse employment decision; and 4) the decision was made under circumstances that give rise to an inference of discrimination. See Id., 107.[9]
In its motion for summary judgment, the defendant argues only that the plaintiff cannot establish the third element, i.e., that the defendant's decision was made under circumstances that give rise to an inference of age or race discrimination. In response, the plaintiff contends that the circumstances surrounding his termination, as well as certain statements made by various individuals both before and during his termination create a genuine issue of material fact as to the defendant's motivation.
In Chambers v. TRM Copy Centers Corp., 43 F.3d 29, 37 (2d Cir. 1994), the Second Circuit held:
 "Circumstances contributing to a permissible inference of discriminatory intent may include . . . the employer's criticism of the plaintiff's performance in ethnically degrading terms . . . or its invidious comments about others in the employee's protected group . . . or the more favorable treatment of employees not in the protected group . . . or the sequence of events leading to the plaintiff's discharge . . . of the timing of the discharge . . ." (Citations omitted.)
In regard to the plaintiff's race discrimination claim, the plaintiff submitted an affidavit in which he avers that he was one of the only Hispanics at the defendant's Stamford office, that another Hispanic employee was denied a promotion, and that the defendant hired an unqualified male over a qualified black female. In addition he submitted a copy of the defendant's EEOC report for 1990 and its Affirmative Action Program for 1991. "[D]isparate treatment plaintiffs may introduce statistics as circumstantial evidence of discrimination." Hollander v.American Cyanamid Co., 172 F.3d 192, 202, cert. denied, ___ U.S. ___, 120 CT Page 13895 S.Ct. 399,145 L.Ed.2d 717 (2d Cir. 1999). "However . . . [inferences] of discrimination solely on the basis of the raw numbers is impermissible in the absence of any attempt to account for other causes of the . . . anomaly." Id., 203. Moreover, the documents relating to the composition of the defendant's workforce several years before the plaintiff's employment are not adequate to create an inference that the "defendant's decision to terminate the plaintiff's employment was based on his race. Furthermore, the plaintiff failed to present evidence from which it can be inferred that the defendant afforded different treatment to similarly situated Hispanic and non-Hispanic employees. "[T]he proper standard is not how other minority employees were treated, but rather how similarly situated white employees were treated." Dawkins v. WITCO Corp.,103 F. Sup.2d 688, 697 n. 4 (S.D.N.Y. 2000); See Chambers v. TRM CopyCenters Corp., supra, 43 F.3d 29, 37.
Because plaintiff's submissions are deficient in the foregoing requirements, this court finds that he has failed to establish a primafacie case of race discrimination as a matter of law. The court must therefore grant summary judgment as to count one of the plaintiff's revised complaint.
In regard to plaintiff's age discrimination claim, he argues that the defendant singled out people over the age of forty, including himself, for termination. The plaintiff submitted the affidavits of four other employees who, he claims, aver that Corcoran targeted employees over the age of forty for termination. The plaintiff and three of these employees generally claim that Corcoran targeted or created problems for women over forty. The only specific examples these employees offered regarding their claims pertained to how Corcoran treated them. However, one employee (Jeffrey) was under forty at the time she was terminated by the defendant, another (Esposito) did not state her age, and the third (Garger) did not provide evidence that her qualifications were equal to those of male employees to whom she compared herself. In order for employees to be similarly situated for the purposes of establishing a plaintiff's prima facie case, they must have engaged in conduct similar to the plaintiff's. Norville v. Staten Island University Hosp., 196 F.3d 89,96 (2d Cir. 1999). The plaintiff has simply failed to raise an issue of fact that similarly situated employees who were younger than he were treated differently when found to have engaged in the same activities.Dawkins v. Witco Corp., 103 F. Sup.2d 688, 697 (S.D.N.Y. 2000). Absent such evidence, Plaintiff fails to satisfy the fourth prong. Id. This court therefore concludes that these affidavits do not give rise to an inference of age discrimination.
The plaintiff is left then with the fact that the defendant terminated him at the age of forty-three. The defendant contends that the same actor CT Page 13896 inference negates any inference of discrimination that can be implied from this fact. According to the Second Circuit Court of Appeals, the same actor inference may apply in circumstances in which an employee who is over forty was hired and fired by the same person within a short period of time. Grady v. Affiliated Central, Inc., 130 F.3d 553, 560 (2d Cir. 1997), cert. denied, 525 U.S. 936, 119 S.Ct. 349, 142 L.Ed.2d 288
(1998). In such circumstances, the inference tempers evidence of discrimination because "it is difficult to impute to [the decision maker] an invidious motivation that would be inconsistent with the decision to hire. . . . Case law teaches that where the termination occurs within a relatively short time after the hiring there is a strong inference that discrimination was not a motivating factor in the employment decision." (Citations omitted; internal quotation marks omitted.) Carlton v. MysticTransportation, Inc., 202 F.3d 129, 137 (2d Cir. 2000), cert. denied, ___ U.S. ___, 120 S.Ct. 2718, 147 L.Ed.2d 983 (2000). In the present case, the plaintiff was forty-two when he was hired by Corcoran, and was forty-three when Corcoran terminated his employment one year later. (Defendant's Memorandum, Ex. B, ¶ 5, 15, 16.)[10]
To the extent that the mere fact that the plaintiff was over forty implies that he was subjected to age discrimination, the same actor inference tempers that inference. Grady v. Affiliated Central, Inc., supra, 130 F.3d 560. Therefore, this court must conclude that the plaintiff has failed to put forth sufficient evidence to establish a prima facie case of age discrimination. Accordingly, the defendant is entitled to summary judgment on count two of the plaintiff's revised complaint.
As to the plaintiff's claim of discriminatory retaliation, General Statutes § 46a-60 (a)(4) makes it a discriminatory employment practice:
 "[f]or any person, employer, labor organization or employment agency to discharge, expel or otherwise discriminate against any person because he has opposed any discriminatory employment practice. . . ."
The defendant argues that the plaintiff cannot establish a causal connection between his complaints of discrimination and the defendant's decision to terminate his employment. The plaintiff responds that the timing of these actions is sufficient evidence of retaliation. A primafacie case of retaliation requires the plaintiff to show participation in a protected activity known to the defendant; an employment action disadvantaging the plaintiff; and, a causal connection between the protected activity and the adverse employment action. Holt v.KMI-Continental, Inc., 95 F.3d 123, 130 (2d Cir. 1996), cert. denied,520 U.S. 1228, 117 S.Ct. 1819, 137 L.Ed.2d 1027 (1997). CT Page 13897
According to the evidence, on August 3, 1995, the plaintiff wrote a letter to Corcoran complaining that the defendant's conduct in giving him a negative performance rating and failing to give him a raise was motivated by discrimination. Five days later, on August 8, 1995, Corcoran terminated the plaintiff's employment. The close proximity in time of these events is a sufficient circumstance to give rise to an inference of retaliation. See Tomka v. Seiler Corp., 66 F.3d 1295, 1309 (2d Cir. 1995); Reed v. A.W. Lawrence Co., 95 F.3d 1170, 1178 (2d Cir. 1996). The defendant, therefore, must offer a legitimate business reason for discharging the plaintiff. The defendant submitted evidence that the plaintiff's performance was lackluster. (Defendant's Memorandum, Ex. A, 1.) As stated above, the burden then shifts back to the plaintiff to show that the defendant's reason is "unworthy of credence." The plaintiff submitted an affidavit from another employee in which she attested to his competence and his success as project leader. (Plaintiff's Memorandum, Ex. 3, ¶ 6.) This evidence is sufficient to raise a genuine issue of material fact as to whether the defendant discharged the plaintiff in retaliation for his complaints. Accordingly, the court must deny summary judgment as to count four of the plaintiff's revised complaint.
In summary, the court grants the defendant's motion for summary judgment as to counts one and two of the plaintiff's revised complaint, and denies summary judgment as to count four.
 2 Count Three (Sexual Orientation Discrimination)
In count three of his revised complaint, the plaintiff alleges that the defendant discriminated against him based on his sexual orientation in violation of General Statutes § 46a-81c. The plaintiff further alleges that he is a heterosexual male and was discriminated against because his supervisor is a homosexual male.
The defendant argues that it is entitled to summary judgment on this cause of action because the plaintiff cannot establish a prima facie case of sexual orientation discrimination. The defendant further argues that even if the plaintiff could establish a prima facie case, the defendant has put forth a legitimate nondiscriminatory reason for the plaintiff's termination, and the plaintiff cannot prove that the reason was pretextual. In response, the plaintiff argues that he has proffered evidence that gives rise to an inference of sexual orientation discrimination and that the evidence creates an issue of fact as to whether the defendant's legitimate business reason is pretextual.
General Statutes § 46a-81c, provides in pertinent part: CT Page 13898
 "It shall be a discriminatory practice in violation of this section: (1) For an employer . . . to discharge from employment any individual or to discriminate against him in compensation or in terms, conditions or privileges of employment because of the individual's sexual orientation . . . ."
As with other claims of discrimination in Connecticut, sexual orientation discrimination claims can be analyzed using the McDonnellDouglas-Burdine model. See Levy v. Commission on Human Rights Opportunities, supra 236 Conn. 102, 105.
To begin, the plaintiff must establish a prima facie case of discrimination. To do so, he must show that he is a member of a protected class, that he was qualified for the position, that he suffered an adverse employment decision, and that the circumstances surrounding the decision give rise to an inference of discrimination. Texas Dept. ofCommunity Affairs v. Burdine, 450 U.S. 248, 252-56, 101 S.Ct. 1089,67 L.Ed.2d 207 (1981); McDonnell-Douglas Corp. v. Green, 411 U.S. 792, 802,93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).
As to the plaintiff's prima facie case, the defendant argues only that the plaintiff cannot establish facts surrounding his discharge that give rise to an inference of discrimination. In response, the plaintiff argues that the following facts give rise to an inference of discrimination based on sexual orientation. First, in their affidavits several other employees aver that the plaintiff's supervisor, Kevin Corcoran, had a preference for young homosexual males. (Plaintiff's Memorandum, Ex's. 1, 2, 4.) Second, the plaintiff asserts that he was one of the few heterosexual males in his department. The plaintiff bases this assertion on his belief that the other males in his department formed a "click" of which he was not a part.[11] Third, the plaintiff alleges that some time before April, 1995, Corcoran complained to Lou Porter, the Vice President of Human Resources, that the plaintiff was homophobic. (Plaintiff's Memorandum, Ex. 1, ¶ 30.). Fourth, the plaintiff alleges that Corcoran was a homosexual. (Plaintiff's Memorandum, Ex. 1, ¶ 52.) Fifth, that Porter told the plaintiff that Kamens was "putting up a smokescreen" when the plaintiff was first removed as project manager in early April, 1995. (Plaintiff's Memorandum, Ex. 1, ¶ 30.). Finally, the plaintiff alleges that the fact that Corcoran terminated him supports his claim of discrimination. (Plaintiff's Memorandum, Exs. 14, 18.)
However, these facts do not give rise to an inference of discrimination based on sexual orientation. The plaintiff's assertion that Corcoran preferred young homosexual males and that he was one of the only CT Page 13899 heterosexual males in the department is based solely on conclusory allegations. There is no evidence that the other males in the department were, in fact, homosexual. Nor did the plaintiff present any factual evidence that these males were unqualified for their positions. Further, the mere fact that a supervisor's sexual orientation is different from that of an employee is not a circumstance that would give rise to an inference of discrimination. Lastly, although the plaintiff asserts that Porter told him that Kamens "was putting up a smokescreen," such a statement, by itself, does not suggest sexual orientation discrimination. Therefore, the court concludes that the admissible evidence submitted by the plaintiff, viewed in the light most favorable to him is insufficient to give rise to an inference of discrimination based on sexual orientation. In other words, a reasonable jury could not find, as a matter of law, that these allegations suggest sexual orientation discrimination on the part of the defendant. Consequently, the plaintiff has failed to establish a prima facie case of discrimination based on sexual orientation. Accordingly, the court must grant the defendant's motion for summary judgment as to count three of the plaintiff's revised complaint.
 3 Count Five (Breach of Contract) and Count Six (Breach of Good Faith and Fair Dealing)
In Count five of his revised complaint the plaintiff alleges that he had an implied contract with the defendant pursuant to which he would be terminated only for good cause. The plaintiff alleges that he provided consideration for this contract by remaining a reliable employee and that the defendant breached the contract by discharging him without just cause. In count six the plaintiff alleges a cause of action for breach of an implied covenant of good faith and fair dealing. This cause of action is based on the plaintiff's allegations that the defendant failed to fulfill his reasonable expectations concerning the employment contract.
The defendant argues that there is no genuine issue of material fact as to the plaintiff's cause of action for breach of contract because the plaintiff admitted in his deposition that he was an at will employee. With respect to the breach of an implied covenant of good faith and fair dealing, the defendant argues that because the plaintiff was employed at will, the defendant cannot be charged with bad faith simply for exercising its right to terminate him. In response, the plaintiff argues that the defendant issued personnel policies that provided for progressive discipline and that several people made representations to him that he would be given every opportunity to succeed. The plaintiff argues that these representations and policies give rise to an implied contract that he would be terminated only for cause. The plaintiff further argues CT Page 13900 that there is a question of fact as to whether an implied contract existed.
According to the evidence, the plaintiff testified that he was hired as an at will employee, and that he understood that he could be terminated for any reason at any time. (Defendant's Memorandum, Ex. C, p. 208.) In addition, in his employment application the plaintiff certified that he understood that nothing in the defendant's personnel guidelines or his communications with company officials created a contract of employment, that the defendant could change its policies without notice and that he was employed at will. The plaintiff also certified therein that he understood that promises made to him regarding his employment would only be binding on the defendant if made in writing and signed by one of the defendant's officers. (Plaintiff's Memorandum, Ex. 5.) However, the evidence also shows that the defendant issued a personnel policy memo which provides for progressive discipline; (Plaintiff's Memorandum, Ex. 22.); the defendant states therein that there may be some policy infractions that call for immediate discharge. (Plaintiff's Memorandum, Ex. 22.) In addition, the evidence also indicates that Porter and Erdman sent the plaintiff an e-mail in which he promised the plaintiff that he would be given every opportunity to succeed, that he would be treated fairly and squarely and that "[h]ow well you perform those duties will determine the future of our relationship." (Plaintiff's Memorandum, Ex. 12.) By typing their names at the end of the e-mails, the defendant's officers in essence "signed" these documents.
All employer-employee relationships not governed by express contracts involve some type of implied contract of employment. Torosyan v.Boehringer Ingelheim Pharmaceuticals, Inc., 234 Conn. 1, 13, 662 A.2d 89
(1995). Typically, an implied contract of employment does not limit the terminability of an employee's employment but merely includes terms specifying wages, working hours, job responsibilities and the like. Thus, as a general rule, contracts of permanent employment, or for an indefinite term, are terminable at will. Id., 14. Pursuant to traditional contract principles, however, the default rule of employment at will can be modified by the agreement of the parties. Id. Accordingly, to prevail, the plaintiff has the burden of proving by a fair preponderance of the evidence that the employer had agreed, either by words or action or conduct, to undertake some form of actual contractual commitment to him under which he could not be terminated without just cause. Id., 15.
In the present case, the plaintiff concedes that he understood at the time he was hired that he was an at will employee. Nonetheless, he argues that in subsequent correspondence Porter and Erdman later made statements to him that created an implied contract that the plaintiff would be terminated only for good cause. Our Supreme Court has found that CT Page 13901 statements similar to the defendant's statement that the plaintiff's job performance would determine his future relationship with the defendant provides sufficient evidence for a jury to find an implied contract existed. Gaudio v. Griffin Health Services Corp., 249 Conn. 523, 538,733 A.2d 197 (1999); Torosyan v. Boehringer Ingelheim Pharmaceuticals,Inc., supra, 234 Conn. 16; Coelho v. Posi-Seal International, Inc.,208 Conn. 106, 111, 544 A.2d 170 (1988). Consequently, this evidence is at least sufficient to create an issue of fact as to the defendant's intent in making those statements. Absent a statutory warranty or definitive contract language, the determination of what the parties intended to encompass in their contractual commitments is a question of the intention of the parties, and an inference of fact. Torosyan v.Boehringer Ingelheim Pharmaceuticals, Inc., supra, 234 Conn. 15. Accordingly, summary judgment on count five is denied.
The defendant's argument that it is entitled to summary judgment on the plaintiff's cause of action for breach of the covenant of good faith and fair dealing is premised on its contention that the plaintiff was employed at will. Given this court's determination that genuine issues of material fact exist on this issue, the defendant's motion for summary judgment as to count six is also denied.
 4 Count Seven (Promissory Estoppel)
In count seven of the revised complaint the plaintiff alleges that he relied, to his detriment, on the actions and words of the defendant that he would be terminated only for good cause. The plaintiff also alleges that the defendant knew or should have known that he would rely on the defendant's statements. The defendant argues that it is entitled to summary judgment on this count because the evidence shows that it never made an express or implied promise to the plaintiff that he would be terminated only for good cause. In response, the plaintiff argues that the emails he received from Porter and Erdman, which state that the plaintiff should and would be given every opportunity to succeed, amount to a promise from the defendant on which the plaintiff detrimentally relied.
Under our well-established law, any claim of estoppel is predicated on proof of two essential elements: the party against whom estoppel is claimed must do or say something calculated or intended to induce another party to believe that certain facts exist and to act on that belief; and the other party must change his position in reliance on those facts, thereby incurring some injury. Chotkowski v. State, 240 Conn. 246, 268,690 A.2d 368 (1997). A fundamental element of promissory estoppel, therefore, is the existence of a clear and definite promise which a CT Page 13902 promisor could reasonably have expected to induce reliance. Thus, a promisor is not liable to a promisee who has relied on a promise if, judged by an objective standard, he had no reason to expect any reliance at all. Wellington Systems, Inc. v. Redding Group, Inc., 49 Conn. App. 152,162, 714 A.2d 21 (1998).
As stated above, the plaintiff offered evidence to show that the defendant made representations to him that he would be treated fairly, that he would be given an opportunity to succeed, that his future in the company depended on job performance, and that the defendant wanted to move forward. (Plaintiff's Memorandum, Ex. 7.). These statements appear to have been made in an effort to return the plaintiff to work without further accusation of discrimination. In other words, an inference could be made by a jury that the defendant was promising the plaintiff that he could only be terminated for poor job performance (good cause) and not because of discrimination or another reason. The intent of the defendant in making these statements is a question of fact for the Jury. SeeTorosyan v. Boehringer Ingelheim Pharmaceuticals, Inc., supra,234 Conn. 15. Accordingly, summary judgment as to count seven is also denied.
 5 Count Eight (Negligent Infliction of Emotional Distress)
In count eight of the revised complaint the plaintiff alleges a cause of action for negligent infliction of emotional distress. The plaintiff argues that the defendant knew or should have known that he would suffer emotional distress as a result of its discriminatory conduct. The defendant argues that it is entitled to summary judgment on this cause of action because the plaintiff's allegations of emotional distress stem from his initial removal as program manager and from the defendant's refusal to settle the lawsuit. The defendant contends that the plaintiff cannot show that its conduct toward him during his termination is sufficient to support a cause of action for negligent infliction of emotional distress. In response, the plaintiff argues that by removing him as program manager without following established procedures, and then reinstating him as a pretense, the defendant engaged in extreme and outrageous behavior. The plaintiff further argues that the defendant knew or should have known that he was suffering from emotional distress because the plaintiff told Erdman, Porter, Corcoran and Kamens as much on several occasions. (Plaintiff's Memorandum, Exs. 7, 8, 9, 10.)
In order to state a claim for negligent infliction of emotional distress, the plaintiff has the burden of pleading that the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that distress, if it were caused, might CT Page 13903 result in illness or bodily harm. Parsons v. United Technologies Corp.,243 Conn. 66, 88-89, 700 A.2d 655 (1997). Accordingly, negligent infliction of emotional distress in the employment context arises only where it is based upon unreasonable conduct of the defendant in the termination process. The mere termination of employment, even where it is wrongful, is therefore not, in and of itself, enough to sustain a claim for negligent infliction of emotional distress. The mere act of firing an employee, even if wrongfully motivated, does not transgress the bounds of socially tolerable behavior. Id.
In the present case, the defendant initially removed the plaintiff from his position as program manager without following established procedures. (Plaintiff's Memorandum, Exs. 11, 12, 22.) The plaintiff maintains that this removal was actually a termination. (Id., Ex. 1, ¶ 30.) Even assuming that it was a termination, a reasonable jury could not find, as a matter of law, that the defendant engaged in conduct during this time period that was extreme and outrageous or calculated to cause extreme emotional distress. See Parsons v. United TechnologiesCorp., supra, 243 Conn. 88-89. The evidence indicates that the defendant not only reinstated the plaintiff as program manager, but attempted to work with him to improve his performance. In addition, the defendant offered the plaintiff another position within the company and gave him additional training. The evidence does not suggest that the defendant's behavior toward the plaintiff was extreme and outrageous or calculated to cause him extreme emotional distress.
Therefore, defendant's motion for summary judgment as to count eight of the revised complaint is granted.
 F Count Nine (Intentional Infliction of Emotional Distress)
In count nine of the plaintiff's revised complaint he alleges a cause of action for intentional infliction of emotional distress. The defendant argues that it is entitled to summary judgment on this cause of action because the plaintiff cannot show that its conduct toward the plaintiff during the term of his employment was extreme and outrageous. The defendant also argues that to the extent this cause of action is based on its failure to settle the plaintiff's lawsuit, it is entitled to judgment as a matter of law, because a claim for emotional distress cannot be based on such conduct. In response, the plaintiff argues that the defendant's conduct in removing him as program manager and telling him that he was "finished" with the company constitutes extreme and outrageous behavior because the defendant continued to engage in this behavior even after the plaintiff informed Erdman, Porter, Kamens and Corcoran that he was suffering from emotional distress. CT Page 13904
In order to prevail on a claim for intentional infliction of emotional distress, the plaintiff must show that the actor intended to inflict emotional distress; or that he knew he should have known that emotional distress was the likely result of his conduct; that the conduct was extreme and outrageous; that the defendant's conduct was the cause of the plaintiff's distress; and, that the emotional distress sustained by the plaintiff was severe. Whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine. Appleton v. Board of Education,254 Conn. 205, 210, 757 A.2d 1059 (2000). Only where reasonable minds disagree does it become an issue for the jury. Id.
Liability for intentional infliction of emotional distress requires conduct that exceeds all bounds usually tolerated by decent society. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!" Conduct on the part of the defendant that is merely insulting or displays bad manners or results in hurt feelings is insufficient to form the basis for an action based upon intentional infliction of emotional distress.Appleton, supra, 210-11.
In the present case, the plaintiff provided evidence that on April 17, 1995, Kamens told the plaintiff that he was finished with the company. (Plaintiff's Memorandum, Ex. 1, ¶ 31.) On May 3, 1995, the plaintiff informed the defendant that he was suffering from emotional distress. (Plaintiff's Memorandum, Ex. 10.) The plaintiff has not put forth any evidence, however, to show that Kamens or other employees made similar comments to him after May 3, 1995. Indeed, the defendant put forth evidence that it corrected the situation not only by reinstating the plaintiff to his position, but also by informing the plaintiff's immediate supervisors that he was to be treated fairly and given an opportunity to succeed. (Plaintiff's Memorandum, Exs. 7, 11, 12.) In addition, the defendant gave the plaintiff additional training in an attempt to prepare him for other responsibilities within the company. (Defendant's Memorandum, Ex. A, ¶ 19.) Under this scenario, the plaintiff has clearly failed to put forth evidence sufficient to show that the defendant's conduct was extreme and outrageous, or calculated to cause extreme emotional distress.
Accordingly, defendant's motion for summary judgment as to count nine of the plaintiff's revised complaint is granted. CT Page 13905
 G Count Ten (Negligent Misrepresentation)
In count ten of the plaintiff's revised complaint he alleges a claim of negligent misrepresentation. The defendant argues that it is entitled to summary judgment on this cause of action because the evidence shows that it did not make any false statements to the plaintiff, and specifically that it did not falsely tell the plaintiff that he would be terminated only for just cause. In response, the plaintiff argues that the defendant represented that he would be given an opportunity to succeed, but in fact, the defendant was merely setting him up for failure.
In order to prevail on his claim, the plaintiff must show that the defendant supplied false information on which the plaintiff relied. One who, in the course of his business, profession or employment supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information. Beverly Hills Concepts, Inc. v. Schatz Schatz, Ribicoff Kotkin, 247 Conn. 48, 57, 717 A.2d 724 (1998). Falsity is an essential element of a negligent misrepresentation claim, and the plaintiff bears the burden of demonstrating that the defendant made such representations that were in fact untrue. Dalev v. Aetna Life Casualty Co.,249 Conn. 766, 792-93, 734 A.2d 112 (1999).
In the present case, the plaintiff offered evidence that the defendant, through Erdman and Porter, told him that he would be given an opportunity to succeed. (Plaintiff's Memorandum, Exs. 7, 11, 12.) The plaintiff failed, however, to offer evidence to show that this representation was false. The evidence indicates that the defendant gave the plaintiff a choice of returning to his position as program manager or moving to another position; (Defendant's Memorandum, Ex. A, ¶¶ 15, 17.); provided the plaintiff with training for a third position; (Id., ¶ 19.); and returned the plaintiff to his position as program manager in May, 1995, and did not discharge him until August, 1995.
Although the evidence also shows that Kamens told the plaintiff the he was finished with the company and that Kamens would play "hardball" (Plaintiff's Memorandum, Ex. 1, ¶ 31.); these statements are irrelevant to the issue of whether the representations that Erdman andPorter made to the plaintiff were false. First, the plaintiff did not present any evidence that Kamens' statement reflected more than his personal animosity toward the plaintiff. Second, Erdman and Porter's representations were made after Kamens made his statement to the CT Page 13906 plaintiff. The plaintiff also argues that the defendant, through Erdman, told the plaintiff that he would be treated fairly, and that this statement was false because the plaintiff was ultimately terminated for discriminatory reasons. The plaintiff has failed, however, to show that he was terminated for a discriminatory purpose. Therefore, the plaintiff cannot show that the defendant's representations that he would be treated fairly were false. Accordingly, the defendant's motion for summary judgment as to count ten is granted.
Based on the foregoing, the court has GRANTED summary judgment as to counts one, two, three, eight, nine and ten of the plaintiff's revised complaint, and has DENIED summary judgment as to counts four, five, six and seven.
Melville, Judge.